1    KAREN P. HEWITT
     United States Attorney
2    AARON B. CLARK
     Assistant U.S. Attorney
3    California State Bar No. 239764
     United States Attorney's Office
4    880 Front Street, Room 6293
     San Diego, California 92101-8893
5    Telephone: (619) 557-6787/(619) 235-2757 (Fax)
     Email: aaron.clark@usdoj.gov
6    Attorneys for Plaintiff
     United States of America
7
                        UNITED STATES DISTRICT COURT
8
                      SOUTHERN DISTRICT OF CALIFORNIA
9

10   | UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3477L |
     |---|---|---|
11   |                Plaintiff, | ) | DATE:           July 14, 2008 |
     |                           | ) | TIME:           2:00 p.m. |
     |           v.              | ) | COURTROOM:   14 |
12   |                           | ) | Before Honorable M. James Lorenz |
13   | JUAN VALDERRAMA-ORTIZ,    | ) |  |
     |                           | ) | UNITED STATES' RESPONSE TO |
     |             Defendant(s). | ) | DEFENDANT'S MOTIONS TO: |
14   |                           | ) |  |
     |                           | ) | (1)   COMPEL DISCOVERY; |
15   |                           | ) | (2)   SUPPRESS POST ARREST |
     |                           | ) |       STATEMENT; |
16   |                           | ) | (3)   PRECLUDE USE OF |
     |                           | ) |       DEPORTATION ORDER AS |
17   |                           | ) |       PROOF OF ALIENAGE; |
     |                           | ) | (4)   REQUIRE GOVERNMENT TO |
18   |                           | ) |       PROVE ALIENAGE BEYOND A |
     |                           | ) |       REASONABLE DOUBT; |
19   |                           | ) | (5)   GRANT LEAVE TO FILE |
     |                           | ) |       FURTHER MOTIONS |
20   |                           | ) |  |
     |                           | ) | TOGETHER WITH STATEMENT OF |
21   |                           | ) | FACTS AND MEMORANDUM |
     |                           | ) | OF POINTS AND AUTHORITIES |
22

23

24          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

25   Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant U.S. Attorney, and hereby

26   files its Response to Defendant's Motions in the above-referenced case.  Said Response is based

27   upon the files and records of this case together with the attached statement of facts and

28   memorandum of points and authorities.

1

2    DATED: July 2, 2008.

3                                    Respectfully submitted,

4                                    KAREN P. HEWITT
                                     United States Attorney
5

6                                    s/ Aaron B. Clark
                                     AARON B. CLARK
7                                    Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          2

1  KAREN P. HEWITT
   United States Attorney
2  AARON B. CLARK
   Assistant U.S. Attorney
3  California State Bar No. 239764
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6787/(619) 235-2757 (Fax)
   Email: aaron.clark@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                 UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10                                    )   Criminal Case No. 07CR3477L
    UNITED STATES OF AMERICA,         )
11                                    )   DATE:          July 14, 2008
                         Plaintiff,   )   TIME:          2:00 p.m.
12                                    )   COURTROOM:     14
                  v.                  )   Before Honorable M. James Lorenz
13                                    )
    JUAN VALDERRAMA-ORTIZ,            )
14                                    )   UNITED   STATES'   STATEMENT   OF
                      Defendant(s).   )   FACTS   AND   MEMORANDUM   OF
15  _____  )   POINTS AND AUTHORITIES

16

17
                                 **I**
18
                    **STATEMENT OF THE CASE**
19
            The Defendant, Juan Valderrama-Ortiz (hereinafter "Defendant"), was charged by a grand
20
    jury on December 27, 2007 with violating Title 8 U.S.C. 1326(a) and (b), Attempted Entry after
21
    Deportation.  Defendant was arraigned on the Indictment on December 27, 2008, and entered a
22
    plea of not guilty.
23
    //
24
    //
25
    //
26
    //
27

28                                    3

## II

## STATEMENT OF FACTS

**A.   IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered deported after an administrative hearing on April 12, 2007.  This was also the date of Defendant's most recent removal from the United States, which occurred at the San Ysidro, California Port of Entry.

**B.   RAP SHEET SUMMARY CHART**

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 8/7/07 | USDC AZ | 1325 - Improper Entry by Alien (m) | 90 days jail |
| 11/27/06 | Placerville Justice Court | PC 261.5(d) Unlawful Sexual Intercourse w a Minor | 270 Days Jail, 3 years probation |

**C.   INSTANT OFFENSE**

On November 15, 2007, at approximately 12:15 a.m., Customs and Border Protection (CBP) Marine Interdiction Agents (MIA) identified a vessel approximately 19 feet in length and bearing registration "CF 3015 NA" moving no navigational lights approximately 10 miles North of the International Border between the United States and Mexico.  Agents approached the vessel and observed six people on board.  Agents then commanded the vessel to halt and boarded the vessel.  Agents then determined that the five passengers on board the boat, including Defendant, were Mexican citizens without documents to be in the United States legally.

Defendant originally was held as a material witness in an alien smuggling charges resulting from the incident.

However, Defendant was later advised of his <u>Miranda</u> rights, which he agreed to waive. He then stated that he is a Mexican citizen who has twice been ordered removed from the United States.  He stated that he had not sought or obtained consent to apply for readmission to the United States.  He also confirmed his criminal record.

### III

### **POINTS AND AUTHORITIES**

**A.     DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

**1.     The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

**a.     The Government Will Comply With Rule 16(a)(1)(D)**

To the extent he has a criminal record, Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record.  Any subsequent or prior similar acts of Defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

**b.     The Government Will Comply With Rule 16(a)(1)(E)**

The government will permit Defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction.  Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available.

1    Counsel should contact the Assistant United States Attorney assigned to the case two weeks before

2    the scheduled trial date and the Assistant will make arrangements with the case agent for counsel

3    to view all evidence within the government's possession.

4                    c.    The Government Will Comply With Rule 16(a)(1)(F)

5         The government will permit Defendant to inspect and copy or photograph any results or

6    reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,

7    that are within the possession of the government, and by the exercise of due diligence may become

8    known to the attorney for the government and are material to the preparation of the defense or are

9    intended for use by the government as evidence-in-chief at the trial.  Counsel for Defendant should

10   contact the Assistant United States Attorney assigned to the case and the Assistant will make

11   arrangements with the case agent for counsel to view all evidence within the government's

12   possession.

13                   d.    The Government Will Comply With Its Obligations Under Brady

14        The government is well aware of and will fully perform its duty under Brady v. Maryland,

15   373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

16   evidence within its possession that is material to the issue of guilt or punishment.  Defendant,

17   however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to

18   the accused, or that pertains to the credibility of the government's case.  As stated in United States

19   v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

20        [T]he prosecution does not have a constitutional duty to disclose every bit of
          information that might affect the jury's decision; it need only disclose information
21        favorable to the defense that meets the appropriate standard of materiality.

22   611 F.2d at 774-775 (citations omitted).  See also United States v. Sukumolachan, 610 F.2d 685,

23   687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

24   exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any

25   pretrial privileges not contained in the Federal Rules of Criminal Procedure).

26   //

27

28                                                6

1                 e.       Discovery Regarding Government Witnesses

2               (1)     Agreements.  The government has disclosed or will disclose the

3    terms of any agreements by Government agents, employees, or attorneys with witnesses that testify

4    at trial.  Such information will be provided at or before the time of the filing of the Government's

5    trial memorandum.[1]  The government will comply with its obligations to disclose impeachment

6    evidence under Giglio v. United States, 405 U.S. 150 (1972).

7               (2)     Bias or Prejudice.  The government has provided or will provide

8    information related to the bias, prejudice or other motivation to lie of government trial witnesses

9    as required in Napue v. Illinois, 360 U.S. 264 (1959).

10               (3)     Criminal Convictions.  The government has produced or will

11    produce any criminal convictions of government witnesses plus any *material* criminal acts which

12    did not result in conviction.  The government is not aware that any prospective witness is under

13    criminal investigation.

14               (4)     Ability to Perceive.  The government has produced or will produce

15    any evidence that the ability of a government trial witness to perceive, communicate or tell the

16    truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

17    or are alcoholics.

18               (5)     Witness List. The government will endeavor to provide Defendant

19    with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

20    trial memorandum is filed, although delivery of such a list is not required.  See United States v.

21    Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986);

22    United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to

23    the production of addresses or phone numbers of possible government witnesses.  See United

24        —————————————————

25    [1]     As with all other offers by the government to produce discovery earlier than it is required
to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared

26    to make early discovery production, or if there is a strategic reason not to do so as to certain
discovery, the government reserves the right to withhold the requested material until the time it

27    is required to be produced pursuant to discovery laws and rules.

28                               7

1    States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974).

2    Defendant has already received access to the names of potential witnesses in this case in the

3    investigative reports previously provided to him or her.

4             (6)     Witnesses Not to Be Called. The government is not required to

5    disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

6    performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d

7    770, 774-775 (9th Cir. 1980). Accordingly, the government objects to any request by Defendant

8    for discovery concerning any individuals whom the government does not intend to call as

9    witnesses.

10             (7)     Favorable Statements. The government has disclosed or will

11    disclose the names of witnesses, if any, who have made favorable statements concerning Defendant

12    which meet the requirements of Brady.

13             (8)     Review of Personnel Files. The government has requested or will

14    request a review of the personnel files of all federal law enforcement individuals who will be called

15    as witnesses in this case for Brady material. The government will request that counsel for the

16    appropriate federal law enforcement agency conduct such review. United States v. Herring, 83

17    F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir.

18    1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

19        Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v.

20    Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

21    to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727

22    F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of

23    the information within its possession in such personnel files, the information will be submitted to

24    the Court for in camera inspection and review.

25             (9)     Government Witness Statements. Production of witness statements

26    is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

27

28                                   8

on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies.  Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum, provided that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse <u>Jencks</u>" statements at that time.

        f.      <u>The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time</u>

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection.  If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions *and* they have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-607 (9th Cir. 1980); <u>see</u> <u>also</u> <u>United States v. Griffin</u>, 659 F.2d 932, 936-938 (9th Cir. 1981).

        g.      <u>All Investigatory Notes and Arrest Reports</u>

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such reports, except to the extent that they include <u>Brady</u> material or the statements of Defendant, are

1  protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

2  connection with the investigation or prosecution of the case."

3          Although agents' reports may have already been produced to the defense, the government

4  is not required to produce such reports, except to the extent they contain <u>Brady</u> or other such

5  material.  Furthermore, the government is not required to disclose all evidence it has or to render

6  an accounting to Defendant of the investigative work it has performed.  <u>Moore v. Illinois</u>, 408 U.S.

7  786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).

8                  h.      <u>Expert Witnesses</u>.

9          Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

10  memorandum, the government will provide the defense with notice of any expert witnesses the

11  testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

12  Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

13  reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

14  defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

15                  i.      <u>Information Which May Result in Lower Sentence</u>.

16          Defendant has claimed or may claim that the government must disclose information about

17  any cooperation or any attempted cooperation with the government as well as any other

18  information affecting Defendant's sentencing guidelines because such information is discoverable

19  under <u>Brady v. Maryland</u>.  The government respectfully contends that it has no such disclosure

20  obligations under <u>Brady</u>.

21          The government is not obliged under <u>Brady</u> to furnish a defendant with information which

22  he already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert. denied</u>,

23  479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977).  <u>Brady</u> is a rule

24  of disclosure.  There can be no violation of <u>Brady</u> if the evidence is already known to Defendant.

25          Assuming that Defendant did not already possess the information about factors which

26  might affect their respective guideline range, the government would not be required to provide

27

28                                          10

1    information bearing on Defendant's mitigation of punishment until after Defendant's conviction

2    or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is

3    disclosed to the defendant at a time when the disclosure remains of value." United States v.

4    Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

5    **B.    DEFENDANT'S  MOTION TO SUPPRESS SHOULD BE DENIED**

6        Defendant moves to suppress statements and requests that the Government prove that all

7    statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.

8    Defendant, however, fails to support his motion with the required declaration. CrimLR 47.1(g).

9    Defendant's Motion should therefore be denied.

10        Even if Defendant had attached the required declaration, however, Defendant's statements

11    are admissible.

12        **1.    Standards Governing Admissibility of Statements**

13        A statement made in response to custodial interrogation is admissible under Miranda v.

14    Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

15    that the statement was made after an advisement of rights, and was not elicited by improper

16    coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard

17    governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found

18    in the "absence of police overreaching"; "coercive police activity is a necessary predicate to the

19    finding that a confession is not 'voluntary'").  Although the totality of circumstances, including

20    characteristics of the defendant and details of the interview, should be considered, improper

21    coercive activity is a necessary predicate to suppression of any statement. Id.; cf. Schneckloth v.

22    Bustamonte, 412 U.S. 218, 226 (1973).  Although it is possible for a defendant to be in such a poor

23    mental or physical condition that they cannot rationally waive their rights (and  misconduct can

24    be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the

25    condition must be so severe that the defendant was rendered utterly incapable of rational choice.

26

27

28                                    11

1    United States v. Kelley, 953 F.2d 562, 565 (9th Cir.1992) (collecting cases rejecting claims of

2    physical/mental impairment as insufficient to prevent exercise of rational choice).

3              **2.     Defendant's Statements Should Not Be Suppressed**

4              Defendant's post-arrest statements are admissible because he voluntarily waived his

5    Miranda rights.  A statement made in response to custodial interrogation is admissible under

6    Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence

7    indicates that the statement was made after an advisement of rights, and was not elicited by

8    improper coercion.  Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of

9    evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda

10   rights should be found in the "absence of police overreaching"; "coercive police activity is a

11   necessary predicate to the finding that a confession is not 'voluntary'").

12             On November 15, 2008, after Defendant was arrested and determined to be subject to

13   prosecution under 8 U.S.C. 1326, he was read his Miranda rights, which he agreed to waive.  .

14             Again, Defendant has not alleged any specific facts to support that the advisement of rights

15   was somehow flawed or that his waiver of his Miranda rights was the result of improper coercion.

16   Indeed, Defendant's allegation of a Miranda violation is mere boilerplate language that fails to

17   demonstrate there is a disputed factual issue requiring an evidentiary hearing.  See United States

18   v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a

19   motion to suppress need be held only when the moving papers allege facts with sufficient

20   definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of

21   fact exist.");  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in

22   his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the

23   district court was not required to hold an evidentiary hearing").  Accordingly, this Court should

24   deny Defendant's motion to suppress and find, based on the Statement of Facts attached to the

25   Complaint in this case, that Defendant's statements were voluntary and given in accordance with

26   Miranda.

27

28                                                12

1

**C.    DEPORTATION DOCUMENTS MAY BE USED AS EVIDENCE OF ALIENAGE**

2

Defendant argues that his order of deportation may not be used to prove alienage.

3

Defendant's contention runs contrary to Ninth Circuit authority.

4

The Ninth Circuit has consistently held that "deportation documents are admissible to prove

5

alienage under the public records exception to the hearsay rule." United States v. Hernandez-

6

Herrera, 273 F.3d 1213 (9th Cir. 2001); see also United States v. Contreras, 63 F.3d 842, 857 (9th

7

Cir. 1995).

8

While deportation documents, standing alone, cannot conclusively establish alienage,

9

United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997), this goes only to the weight of the

10

evidence, not its admissibility.  The motion should therefore be denied

11

**D    THE GOVERNMENT WILL PROVE ALIENAGE BEYOND A REASONABLE DOUBT**

12

The Government acknowledges that one of the elements of the crime of Attempted Entry

13

After Deportation is that Defendant is an alien.  The Government therefore acknowledges that it

14

must prove this fact beyond a reasonable doubt.

15

Defendant further claims, however, that he should be entitled to offer evidence of prior

16

legal residence in the United States to rebut the Government's evidence of alienage.  The Court

17

should preclude him from doing so.

18

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the

19

United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal

20

status in the United States, and the citizenship of his wife, mother and children" in a section 1326

21

prosecution.  Id., overruled on limited and unrelated grounds by United States v. Alvarado-

22

Delgado, 98 F.3d 492, 493 (9th Cir. 1996).  Ibarra appealed, and the Ninth Circuit affirmed,

23

reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect

24

the issue of his alienage, the district court properly excluded it as irrelevant.  Id.

25

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the

26

defendant filed a motion *in limine* to introduce evidence of what she termed "de facto" citizenship

27

28

1    as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to

2    introduce evidence of: (1) involuntariness of initial residence; (2) continuous residency since

3    childhood; (3) fluency in the English language; and (4) legal residence of immediate family

4    members. Id. at 712.

5         The court denied the motion, noting that "none of these elements are relevant to the

6    elements that are required for conviction under §1326." Id. The court also noted that admission

7    of the evidence would run "contrary to the intent of Congress." Id. In particular, the court stated

8    that, under Section 212 of the Immigration and Naturalization Act of 1952, codified at 8 U.S.C.

9    § 1182(c), the Attorney General may exercise his discretion not to deport an otherwise deportable

10   alien, if the alien has lived in the United States for 7 years. Id. at 712-13. The factors which the

11   defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the

12   factors the Attorney General considers in deciding whether to exercise this discretion." Id. at 713.

13        Thus, the court reasoned, "the factors that [the defendant] now seeks to present to the jury

14   are ones that she could have presented the first time she was deported." Id. Therefore, the court

15   held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In

16   particular, "under the scheme envisioned by Congress, an alien facing deportation may present

17   evidence of positive equities only to administrative and Article III judges, *and not to juries*." Id.

18   (emphasis added).

19        This particular aspect of the motion should therefore be denied.

20   **E.    THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

21

22        The Government does not object to the granting of leave to file further motions as long as

23   the order applies equally to both parties and any additional defense motions are based on newly

24   discovered evidence or discovery provided by the Government subsequent to the instant motion.

     //

25   //

26

27

28                                                    14

1

## IV

2

## __LEAVE TO FILE FURTHER MOTIONS__

3          Should new information or legal issues arise, the United States respectfully requests the

4     opportunity to file such further motions as may be appropriate.

5

## V

6

## __CONCLUSION__

7          For the foregoing reasons, the Government respectfully requests that Defendant's motions,

8     except where unopposed, be denied.

9          DATED: July 2, 2008.

10                                             Respectfully submitted,

11                                             KAREN P. HEWITT
                                              United States Attorney
12

13                                             s/ Aaron B. Clark_____
                                              AARON B. CLARK
14                                             Assistant United States Attorney

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,                    Case No. 07CR3334-L

4                        Plaintiff

5              v.                                 CERTIFICATE OF SERVICE

6    JUAN VALDERRAMA-ORTIZ,

7                        Defendant(s).

8

9    IT IS HEREBY CERTIFIED THAT:

10          I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of

11   age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12          I am not a party to the above-entitled action.  I have caused service of UNITED STATES'

     RESPONSE on the following parties by electronically filing the foregoing with the Clerk of the

13   District Court using its ECF System, which electronically notifies them.

14          1.  Steven Peterson, Esq.

15          I declare under penalty of perjury that the foregoing is true and correct.

16          Executed on July 2, 2008.

17                                               s/ Aaron B. Clark
18                                               AARON B. CLARK

19

20

21

22

23

24

25

26

27

28